FILED

2014 Oct-03  AM 09:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED

2014 OCT -3 AM 8:44

U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | 2:14-CR-319-KOB-SGC |
| JOSEPH HAROLD GANDY | ) | |

## BINDING PLEA AGREEMENT

The Government and defendant **JOSEPH HAROLD GANDY** hereby

acknowledge the following plea agreement in this case:

### PLEA

The defendant agrees to (i) plead guilty to **COUNTS ONE and TWO** of the

Information filed in the above numbered and captioned matter; (ii) stipulate that the

amount of fraud on the specified unlawful activity (wire fraud) supporting the

money laundering offense to which the defendant is pleading guilty is between

$1 million and $2.5 million; (iii) stipulate to a sentence of imprisonment of 45

months; (iv) pay restitution as set forth below in paragraph III; (v) return the "Blue

Diamond" and all other jewelry he listed as stolen during the Denman-Crosby

robbery over which he has custody or control; and (vi) consent to and not oppose

the government's motion for an order of forfeiture of all jewelry turned over to the

Defendant=s Initials

United States pursuant to this agreement and all jewelry and other items seized by the FBI during the search of the defendant's residence on November 11, 2013, except for certain specified items that will be returned to the defendant's attorney after sentencing.   In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorney, agrees to the disposition specified below, subject to the conditions in paragraphs **VII** and **VIII**.

## TERMS OF THE AGREEMENT

## I. MAXIMUM PUNISHMENT

The defendant understands that the maximum statutory punishment that may be imposed for each count charging the crime of money laundering, in violation of Title 18, United States Code, Section 1957, as charged in COUNT ONE, is:

      a.     Imprisonment for not more than 10 years;

      b.     A fine of not more than $250,000.00 or twice the amount of the criminally derived property involved in the transaction, or

      c.     Both (a and b);

      d.     Supervised release of not more than 3 years; and

      e.     Special Assessment Fee of $100 per count.

Defendant=s Initials

The defendant further understands that the maximum statutory punishment that may be imposed for each count charging the crime of felon in possession of firearms, in violation of Title 18, United States Code, Section 922(g)(1), as charged in COUNT TWO is:

      a.     Imprisonment for not more than 10 years;

      b.     A fine of not more than $250,000.00, or

      c.     Both (a and b);

      d.     Supervised release of not more than 3 years; and

      e.     Special Assessment Fee of $100 per count.

## II. FACTUAL BASIS FOR PLEA

The Government is prepared to prove, at a minimum, the following facts at the trial of this case:

Defendant **JOSEPH HAROLD GANDY** was an owner and the operator of Denman-Crosby Jewelry Store located in Mountain Brook Village in Jefferson County, Alabama.   On December 18, 2004, **GANDY** reported that Denman-Crosby Jewelry Store had been robbed at gunpoint by two unidentified males.   At the time of the robbery, Denman-Crosby was promoting a loose diamond sale for Christmas and had many diamonds and other jewelry in the store on consignment from jewelers in New York and elsewhere.   Denman-Crosby was insured by XL Specialty Insurance Company in the amount of $2.6 million. GANDY increased the amount of coverage under the insurance policy a few weeks prior to the robbery.

On January 26, 2005, and March 10, 2005, **GANDY** submitted and caused to be submitted, by interstate wire transmissions, documents claiming that the value of

Defendant=s Initials 

items stolen during the robbery totaled approximately $2.8 million.   Among the documents submitted by **GANDY** was a detailed inventory of the stolen jewelry. XL Specialty Insurance paid $2.6 million, the policy's limit, based on **GANDY's** representations regarding the robbery and the items stolen.

Beginning in July 2013, **GANDY** caused diamonds reported by him as stolen during the 2004 robbery to be pawned at jewelry stores in Jefferson County, Alabama. Initially, **GANDY**, through a friend, attempted to pawn a 1.59 FVS1 diamond mounted in a platinum setting at a local jewelry store but did not complete the transaction when the jeweler requested documentation and attempted to closely examine the diamond.   The concern was that the diamond might bear a unique laser inscription that could be used to trace the diamond's history.   Subsequently, **GANDY** examined 10-12 diamonds using a microscope and selected diamonds that were not marked with an inscription.

On July 25, 2013, **GANDY** told the friend that he would pawn one of two almost identical diamonds and that each was valued at approximately $43,000 and should pawn for approximately $16,000.   **GANDY** discussed opening a new jewelry store if he could sell a few stones at a decent price.   He stated that he had about 30 stones and that a jewelry store is a great way to launder money because you deal in cash.   Discussing the robbery of Denman-Crosby, **GANDY** stated: "I paid everybody.   The only people that got f___ed was the insurance company….The only people that got screwed on that was the insurance company. Not one vendor to the best of my knowledge got f___ed."

The next day, July 26, 2013, following up on the plan, **GANDY** sent the friend to a jewelry store in Birmingham, Alabama, to pawn a 3.01 FVS1 emerald cut diamond.   When giving the diamond to the friend, **GANDY** stated that he wanted no less than $15,000 and "I don't want the son of a bitch to see this GIA," a report setting forth details about the diamond.   The jewelry store accepted the diamond and gave a $12,000 loan in exchange.   **GANDY** received the money and paid the friend $2,000.   The diamond was among those reported by **GANDY** as stolen during the robbery of Denman-Crosby.

When the friend delivered the money to **GANDY**, they discussed the "Blue Diamond," a particularly unique and valuable diamond that had been sent to Denman-Crosby on consignment and which **GANDY** had reported as stolen in

Defendant=s Initials 

2004.   **GANDY** had shown the Blue Diamond to the friend earlier in 2013. When asked if he planned to sell the Blue Diamond, **GANDY** replied: "I might. Sure.   In Europe, nobody gives a rat's ass.   I'd sell it but you know we're not giving it away. I'm not selling shit for nothing."

On August 23, 2013, **GANDY** again had his friend pawn a stolen diamond. **GANDY** gave the friend two diamonds from which to choose.   Descriptions of the diamonds were written on the packages containing the diamonds.   The friend took the 3.45 carat cushion cut diamond and pawned it at a jewelry store in Birmingham, Alabama, in exchange for $8,000.   This diamond, and the one that was not pawned, were both included on the stolen inventory list **GANDY** provided to the insurance company following the robbery.   The money was given to **GANDY** and the friend received $1,880 from **GANDY**.

On September 25, 2013, **GANDY** again gave the friend a diamond to pawn. This diamond was described as a 2.16 carat ES1 and **GANDY** wanted at least $9,000 in exchange.   The friend did not complete the transaction because the jewelry store offered only $5,000.

On or about October 10, 2013, **GANDY** prepared a handwritten list of loose diamonds he possessed, including information regarding cut, weight, color, clarity, and the value he placed on each stone.   The list included 32 stones and the total value was $987,464.   Eighteen of the listed stones matched descriptions of diamonds **GANDY** reported to the insurance company as stolen during the Denman-Crosby robbery.

On or about October 28, 2013, GANDY provided the friend four pieces of jewelry to pawn.   The descriptions of three of the four matched items included by **GANDY** on the stolen inventory list he submitted to the insurance company following the robbery.

On or about November 7, 2013, the friend pawned one of those stones, a 2.16 carat round diamond, at a Birmingham, Alabama, jewelry store, receiving $2,000 in exchange for a one month loan. This diamond was listed by **GANDY** as stolen during the Denman-Crosby robbery.

Defendant=s Initials

On or about November 11, 2013, law enforcement agents conducted a search of **GANDY's** residence in Vestavia Hills, Alabama, pursuant to a federal search warrant.    During the search, agents recovered other items of jewelry that **GANDY** included on the inventory of stolen items, including 9 Rolex watches.    The total value of the jewelry **GANDY** falsely included on the inventory of stolen items (the amount of fraud) was at least $1.5 million.

Also seized during the search were 99 firearms, including two assault rifles (Egyptian ACC Int/Intrac bearing serial number AC0053766 and SKS 7.52 x 39 bearing serial number 240237E), two guns with silencers (Ruger .22 caliber rifle with suppressor bearing serial number 0036720 and Smith & Wesson P22 Walther with suppressor bearing serial number N029930), and a sawed-off shotgun. Several of the firearms were loaded with ammunition.    **GANDY** was prohibited from possessing firearms because on July 24, 1989, he was convicted in case number CR-89-A-124-S of mail fraud, a crime punishable by imprisonment for a term exceeding one year.    All of the seized weapons had travelled in interstate or foreign commerce.

**GANDY** has suggested, through counsel, that with the exception of several older firearms that had been passed down from his father and grandfather or purchased by **GANDY** prior to his 1989 conviction, the firearms belonged to his son who died in 2004.    Although several of the firearms were found loaded and readily accessible during the search, most of the firearms were found in such a place and condition as to suggest that they had not been handled for some time.    The United States does not possess any evidence or information to suggest that **GANDY** is violent or has engaged in violent behavior in the past.

**The defendant hereby stipulates that the facts stated above are**

**substantially correct and that the Court can use these facts in calculating the**

**defendant=s sentence.    The defendant further acknowledges that these facts**

**do**

Defendant=s Initials

not constitute all of the evidence of each and every act that the defendant

and/or any co-conspirators may have committed.


*Joseph Harold Gandy*

JOSEPH HAROLD GANDY

## III.   **STIPULATED SENTENCE**

Pursuant to Rule 11(c)(1)(C), Fed.R.Crim.P., the Parties stipulate that a

sentence of 45 months imprisonment is the appropriate disposition of this case.

This agreement does not affect the Court's discretion to impose any lawful fine or

restitution, or to set any lawful conditions of supervised release not otherwise

stipulated to in this agreement.   In the event that the Court rejects this plea

agreement, either party may elect to declare the agreement null and void.   Should

the Defendant so elect, the Defendant will be afforded the opportunity to withdraw

his plea agreement, pursuant to the provisions of Federal Rule of Criminal

Procedure 11(d)(2)(A).

The government also agrees to make the following recommendations:

> (a)   That the defendant be awarded an appropriate reduction in

Defendant=s Initials

offense level for acceptance of responsibility;

(b)   That following any term of imprisonment, the defendant be placed on supervised release for a period to be determined by the court, subject to the standard conditions of supervised release as set forth in U.S.S.G. ' 5D1.3 and any additional conditions recommended by United States Probation;

(c)   That the defendant be required to pay restitution of $20,000.00 to the victims of his money laundering offenses.   The United States intends to apply proceeds received from the sale of forfeited property to the the defendant's restitution obligation.

(d)   That the defendant pay a special assessment fee of $200, said amount due and owing as of the date sentence is pronounced.

(e)   That the defendant forfeit all items seized by the FBI during the search of his residence, except for certain specified items, and all items turned over to the government pursuant to this agreement.

## IV.   WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF

Defendant=s Initials 

In consideration of the recommended disposition of this case, I, JOSEPH HAROLD GANDY, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the court might impose.   Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. ' 2255.

The defendant reserves the right to contest in an appeal or post-conviction proceeding the following:

      (a)    Any sentence imposed in excess of the applicable statutory maximum sentence(s);

      (b)    Any sentence imposed in excess of the guideline sentencing range determined by the court at the time sentence is imposed; and

      (c)    Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the Federal Sentencing Guidelines and their application

Defendant=s Initials

to the defendant=s case with the defendant=s attorney, who explained them to the defendant=s satisfaction.   The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.

I, JOSEPH HAROLD GANDY, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.


_____
JOSEPH HAROLD GANDY

## V.   UNITED STATES SENTENCING GUIDELINES

Defendant=s counsel has explained to the defendant, that in light of the United States Supreme Court=s decision in United States v. Booker, the federal sentencing guidelines are advisory in nature.   Sentencing is in the court=s discretion and is no longer required to be within the guideline range.   The defendant agrees that, pursuant to this agreement, the court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and defendant explicitly waives any right to have those facts found by a jury beyond a

reasonable doubt.

## VI.  **AGREEMENT IS BINDING ON COURT**

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the stipulated sentence as described in Section III **BINDS THE COURT ONCE THE COURT ACCEPTS THE PLEA AGREEMENT**.   The defendant may withdraw his plea of guilty, pursuant to Fed. R. Crim. P. 11(d)(2), if the court rejects the plea agreement under Rule 11(c)(5).

However, as to any other terms and conditions of the sentence, other than the term of imprisonment, the Parties fully and completely understand and agree that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the Parties, is **NOT BINDING UPON THE COURT,** and that the Court need not accept any other recommendations.   Further, the defendant understands that if the Court does not accept the Parties' recommendations, he does not have the right to withdraw his plea, other than the right previously addressed, as to the term of imprisonment, under Rule 11(d)(2).

## VII. **VOIDING OF AGREEMENT**

The defendant understands that should the defendant move the Court to accept the defendant=s plea of guilty in accordance with, or pursuant to, the provisions of <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970), or tender a plea of *nolo*

*contendere* to the charges, this agreement will become NULL and VOID.   In that event, the Government will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein.

## VIII.   SUBSEQUENT CONDUCT

The defendant understands that should the defendant violate any condition of pretrial release or violate any federal, state, or local law, or should the defendant say or do something that is inconsistent with acceptance of responsibility, the United States will no longer be bound by its obligation to make the recommendations set forth in paragraphs IV and V of the Agreement, but instead, may make any recommendation deemed appropriate by the United States Attorney in her sole discretion.

## IX.   OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## X.   COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to fully disclose all assets in which the defendant has any interest or over which the defendant exercises control,

Page 12 of 17

Defendant=s Initials 

directly or indirectly, including those held by a spouse, nominee or other third party.   The defendant also will promptly submit a completed financial statement to the United States Attorney=s Office, in a form that it provides and as it directs. The defendant also agrees that the defendant=s financial statement and disclosures will be complete, accurate, and truthful.   Finally, the defendant expressly authorizes the United States Attorney=s Office to obtain a credit report on the defendant in order to evaluate the defendant=s ability to satisfy any financial obligation imposed by the Court.

## XI. <u>AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION</u>

As part of the defendant=s plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts.   The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant=s range of punishment under the advisory sentencing guidelines.   The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct.   This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors which may constitute or relate to relevant conduct.   Additionally, if this agreement

Defendant=s Initials 

contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any.

## XII.   TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the defendant understands and acknowledges that this agreement does not apply to or in any way limit any pending or prospective proceedings related to defendant=s **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

Defendant recognizes that pleading guilty may have consequences with respect to immigration status if is not a citizen of the United States.   Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty.   Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including attorney or the district court, can predict to a certainty the effect of conviction on immigration status.   Defendant nevertheless affirms that wants to plead guilty regardless of any immigration consequences that plea may entail, even if the consequence is automatic removal from the United States.

Defendant=s Initials 

## XIII.   DEFENDANT=S UNDERSTANDING

I have read and understand the provisions of this agreement.   I have discussed the case and my constitutional and other rights with my lawyer.   I am satisfied with my lawyer's representation in this case.   I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence in my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence.   I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

I understand that this Plea Agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this

Page 15 of  17          Defendant=s Initials 

Agreement and have signed the signature line below to indicate that I have read,

understand, and approve all of the provisions of this Agreement, both individually

and as a total binding agreement.


_9-4-14_
DATE

_Joseph Harold Gandy_
JOSEPH HAROLD GANDY
Defendant


## XIV. <u>COUNSEL=S ACKNOWLEDGMENT</u>

I have discussed this case with my client in detail and have advised my client

of all of my client=s rights and all possible defenses.   My client has conveyed to

me that he understands this Agreement and consents to all its terms.   I believe the

plea and disposition set forth herein are appropriate under the facts of this case and

are

in accord with my best judgment.   I concur in the entry of the plea on the terms and

conditions set forth herein.


_9-14-2014_
DATE

G. DOUGLAS JONES
Defendant=s Counsel


Page 16 of  17

Defendant=s Initials

## XV. GOVERNMENT=S ACKNOWLEDGMENT

I have reviewed this matter and this Agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

JOYCE WHITE VANCE
United States Attorney

_9/5/14_____

DATE

_George Martin_____

GEORGE A. MARTIN, JR.
Assistant United States Attorney

Page 17 of 17

Defendant=s Initials